## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE *EX PARTE* APPLICATION OF NATIONAL BANK TRUST FOR AN ORDER TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782. | 3:20 - mc - 85 (CSH) <br><br> **JANUARY 13, 2021** |

## RULING ON SUPPLEMENTAL *EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

**HAIGHT, Senior District Judge:**

### I.  INTRODUCTION

In this action, brought pursuant to 28 U.S.C. § 1782, applicant National Bank Trust ("NBT") requests that this Court enter an *ex parte* order to permit discovery from Connecticut Shotgun Manufacturing Company ("Connecticut Shotgun") and four financial institutions, including: Wells Fargo Bank, Summit Investment Management, Ltd., Bank of America, and People's United Bank (herein collectively the "Financial Institutions"). *See* Doc. 1 (*Ex Parte* Application) and Doc. 3 (Supplemental *Ex Parte* Application).[1] NBT makes this application in relation to litigation in the United Kingdom, *National Bank Trust v. Ilya Yurov, et al.*, Case No. CL-2016-000095 (the "U.K. Action") and to

---

[1] National Bank Trust fully incorporates its original "Application" and exhibits thereto within its "Supplemental Application," which also seeks permission for discovery from Bank of America and People's United Bank, two financial institutions not included in the original application. Doc. 3, at 1. The Court considers the original application subsumed into the supplemental one, and rules on the latter as comprising both.

1

assist in enforcement of a judgment of approximately U.S. $900 million entered in that action (the "Judgment"). NBT asserts that "[b]ecause the discovery sought here will assist the tribunal in the U.K. Action in obtaining relevant information and will encourage foreign jurisdictions to provide reciprocal assistance to American courts," this Court should "exercise its discretion to authorize National Bank Trust to proceed with the service of document subpoenas on Connecticut Shotgun and the Financial Institutions." Doc. 1, at 1.

As discussed below, upon review of the papers submitted by NBT in support of its application and supplemental application, the Court will grant permission to NBT for the requested discovery pursuant to 28 U.S.C. § 1782.

## II.  DISCUSSION

### A.  Factual Background

In brief, as represented by applicant NBT, the facts are as follows. NBT is one of Russia's largest banks. Doc 1, at 1. Sergey Belyaev, a defendant in the U.K. Action, along with other individuals, acted fraudulently with respect to ownership and control of NBT, causing that bank to suffer losses of more than one billion U.S. dollars and thus collapse in 2014. *Id.* at 1-2. To conceal NBT's financial problems, Belyaev and his co-defendants engaged in a "balance management scheme," which the U.K. Court described as similar to a *Ponzi* scheme. *Id.* at 2. Under that scheme, these defendants caused NBT to advance loans to entities they secretly controlled and then routed most of the proceeds around bank accounts outside of Russia before returning them to NBT to create the false appearance that other loans were being serviced. The fraud was concealed from NBT's regulator, the Central Bank of Russia, as well as NBT's auditors and customers, whose deposits enabled the fraud's continuation. *Id.* Ultimately, the Russian taxpayers bailed out NBT. *Id.*

The U.K. Action was commenced by NBT in the Commercial Court of the London High Court of Justice, Queens Bench Division (the "U.K. Court") against Belyaev and the other participants in the fraud. On January 23, 2020, following a nine-week trial, the U.K. Court entered a final judgment in favor of National Bank Trust and against Belyaev and other individuals in the approximate principal amount of U.S. $900 million. *See* Doc. 1-1 and 1-2 (Ex. A.) ("Judgment"). In rendering its decision, the U.K. Court found Belyaev an unreliable, evasive witness who told numerous lies despite the weight of evidence contained in "contemporaneous documents evidencing his active knowledge and participation in the frauds." Doc. 1, at 2. *See also, e.g.*, Doc. 1-1, ¶ 129 ("I found Mr. Belyaev to be an unsatisfactory witness from the very outset of his evidence. . . . [I]t was abundantly clear to me from the start of his cross-examination not only that he had received witness training but that he had taken from that witness training just about every available technique to avoid answering questions asked of him if he did not wish to do so or wished to gain time before doing so.").

According to NBT, the Judgment remains unsatisfied, with approximately U.S. $900 million outstanding as of September 30, 2020. Doc. 1, at 2-3. NBT is thus currently engaged in enforcement proceedings in the United Kingdom and other jurisdictions to collect the judgment. *Id.* at 3.

During these enforcement proceedings, Belyaev fled Russia and currently resides with his wife, Irina Belyaeva, in Avon, Connecticut. A copy of Sergey Belyaev's asset disclosure in the U.K. Action [Doc. 1-3 (Ex. B)] lists assets from which NBT intends to collect on the Judgment. Doc. 1, at 3. That list reveals that Belyaev holds substantial bank accounts at each of the Financial Institutions from which NBT seeks discovery. *Id.* However, he now claims that he has used all of the funds in these accounts for living expenses, a proposition of which NBT "is skeptical." *Id.* According to NBT and Belyaev's list of assets [Doc. 1-3], at 3-4, the accounts contained hundreds of thousands of dollars. Doc. 1, at 3-4.

NBT thus requests permission to obtain statements from the Financial Institutions for the last five years (January 1, 2015, to the present) to "ascertain the disposition of the funds in those accounts over time" and to "help locate assets" Belyaev has failed to disclose.[2] *Id.* at 4.

Furthermore, NBT has alleged that between 2013 and 2015, Belyaev engaged in large transactions with Connecticut Shotgun, making a series of payments to that company that totaled $3,825,833. *Id.* In contrast, Belyaev only disclosed a gun collection worth $150,000 in the U.K. Action. *Id.*; Doc. 1-3, at 4. Due to this large discrepancy, NBT seeks documents concerning Belyaev's transactions with Connecticut Shotgun to "determine the correct value" of the assets "in relation to the Enforcement Proceeding in the United Kingdom. Doc. 1, at 4-5.

**B.  28 U.S.C. § 1782**

Pursuant to 28 U.S.C. § 1782, a United States District Court has broad discretion to order discovery from a person who resides or is found in the District to assist foreign tribunals with a foreign proceeding. In particular, § 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person . . . .

28 U.S.C. § 1782(a).

As the Second Circuit articulated, "[t]he goals of the statute are to provide equitable and efficacious discovery procedures in United States courts for the benefit of tribunals and litigants

---

[2] According to NBT, the Judgment in the U.K. Action specifies that the evidence in that case showed that "Mrs. Belyaeva is a housewife" so that "any money which has come to Irina has come from [Sergey Belyaev] or has derived from her investments." Doc. 1, at 4 (quoting "Judgment" [Doc. 1-2], ¶ 1387). Moreover, the U.K. Court noted that Belyaev "understood that all assets were held jointly with his wife." Doc. 1-2, ¶ 1387.

involved in litigation with international aspects, and to encourage foreign countries by example to provide similar means of assistance to our courts." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citations and internal quotation marks omitted). Accordingly, "[i]n pursuit of these twin goals, the statute has, over the years, been given increasingly broad applicability." *Id.* (citations and internal quotation marks omitted).

Moreover, as discussed by NBT in its application, the Second Circuit has delineated three factors that must be present for "a district court [to be] authorized to grant a § 1782 request . . . : (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn*, 673 F.3d at 80 (citing *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 83 (2d Cir. 2004)). In its counsel's thorough application, NBT has demonstrated adequately that the three statutory requirements are satisfied.

First, the entities subject to the proposed discovery subpoenas are found in the District of Connecticut. Each has a pervasive, permanent presence in Connecticut, maintaining an office or otherwise operating within the state. Doc. 1, at 6-7. Second, the discovery sought is for use in a foreign proceeding, the action at issue in the United Kingdom. Third, the application has been made by an interested person, NBT, the plaintiff in the U.K. Action, and will assist in determining Belyaev's assets for purposes of enforcement of the Judgment in that case. *Id.* at 7.

In addition, as NBT has acknowledged, there are four discretionary factors that a district court must consider in granting a § 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding (*i.e.,* whether the documents or testimony sought are within

the foreign tribunal's jurisdictional reach), (2) "the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance," (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States," and (4) whether the discovery requests are "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 244-45 (2004). As NBT has argued, each of the *Intel* factors favors granting discovery in this case.

First, none of the entities from whom NBT seeks discovery is a participant in the U.K. Action. Doc. 1, at 7-8. Discovery from these entities is thus not directly obtainable in the U.K. Action so requires the assistance of this Court under § 1782. *Id.*

Second, NBT has not found, nor is the Court aware of, any authority to suggest that the English court would be unwilling to accept discovery under § 1782. *Id.* at 8. *See also In re Application of Shervin Pishevar for an Order to take Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 304 (S.D.N.Y. 2020) ("Respondent has failed to provide the Court with authoritative proof that the English courts would reject the evidence obtained by the [relevant] 1782 Application"), *adhered to on reconsideration sub nom. In re Pishevar*, No. 1:19-MC-00503 (JGK)(SDA), 2020 WL 1862586 (S.D.N.Y. Apr. 14, 2020).

Third, there is no indication that the § 1782 request is an attempt to circumvent foreign proof-gathering restrictions or other policies of the United Kingdom or the United States. NBT asserts that it does not seek discovery that would violate any foreign laws and/or public policy. Doc. 1, at 9. In particular, NBT does not seek information such as state secrets or attorney-client communications; rather, it requests financial and transactional information that is typical of post-judgment discovery in

an effort to enforce the Judgment. *Id.*

Fourth, and finally, there is no reason to believe that the proposed discovery requests are "unduly intrusive or burdensome" under *Intel*. *Id.* at 10. The discovery sought does not concern privileges or place an undue burden on the entities from which NBT seeks information. As the draft subpoenas submitted by NBT establish, NBT seeks documents commonly exchanged in litigation in the United States. With respect to the Financial Institutions, NBT requests statements regarding the Belyaev and Belyaeva bank accounts over the last five years. As to Connecticut Shotgun, NBT seeks documents regarding the history of its transactions with Belyaev over the last seven years and the accounting of said transactions. *Id.*

Having examined the draft subpoenas by NBT, the Court finds that the requests for documents are proper in their scope, neither unduly intrusive nor burdensome. Said requests are narrowly tailored, concerning only accounts, assets, and transactions of Sergei Belyaev and his wife, Irina Belyaeva. No information or documentation is sought regarding other individuals; and the time frames in the discovery requests are sufficiently limited to prevent potential burden. The Court thus finds that all four *Intel* factors favor NBT's application for discovery under § 1782.

### III. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the application of National Bank Trust and authorizes it, pursuant to 28 U.S.C. § 1782, to serve Connecticut Shotgun and the Financial Institutions with subpoenas substantially similar in form to Exhibits C and D attached to NBT's original *Ex Parte* Application [Doc. 1], as supplemented by NBT's "Supplemental Application" [Doc.3]. *See* Doc. 1, Ex. C (subpoenas addressed to the Financial Institutions, as supplemented per Doc. 3 to include Bank of America and People's United Bank) and Ex. D (subpoena addressed to Connecticut Shotgun).

Service of said subpoenas and "the document[s] or other thing[s] produced" shall be done "in accordance with the Federal Rules of Civil Procedure," 28 U.S.C. § 1782(a).

    It is SO ORDERED.

    Dated: New Haven, Connecticut
          January 13, 2021

                                        */s/Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge